IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARK GERAGHTY WONDERS,        )
                             )
            Plaintiff,        )
                             )
v.                            )   CIVIL ACTION NO. 1:12cv514-WKW
                             )
ANTHONY CRUTCHFIELD, Major General,  )
and JAMES MUSKOPF, Colonel,   )
                             )
            Defendants.       )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Mark Geraghty Wonders, proceeding *pro se* in this action, sues defendants

Major General Anthony Crutchfield and Colonel James Muskopf of Fort Rucker, Alabama,

alleging that they violated his constitutional right to due process.  Plaintiff states that:

> On September 7, 2010, co-Defendant (Garrison Commander (Colonel)) James
> Muskopf, after receiving consultation and approval from the Commanding
> General, co-Defendant (Major General) Anthony Crutchfield, issued the
> Plaintiff a bar to Fort Rucker. In his letter, Defendant Muskopf stated the
> action was taken because the Plaintiff "... threatened the security, order, and
> discipline of the installation by misusing a government computer and
> distributing controlled classified information (FOUO) via email to your home
> email address and commercial union address," and because "upon notice that
> your security clearance was suspended, you created a disturbance in the
> security office with behavior that was aggressive, intimidating, and threatening
> in nature. This is not the first instance of aggressive behavior on your part.
> Your history of aggressive behavior towards employees at Fort Rucker is
> detrimental to the good order and discipline of the installation and make you
> a threat to the security, safety and well-being of persons on Fort Rucker." On
> December 23, 2010, Defendant Muskopf issued a follow-on letter – ordered
> released by a Department of Defense (DoD) Administrative Judge –
> describing in detail his further justification for the bar. In this letter, Defendant
> Muskopf defamed the Plaintiff's character, stating he "will not hesitate to act
> dishonestly or violate established rules and regulations for personal gain."

Overwhelming evidence, however, clearly uncovers intentional, illegal, malicious, and fraudulent activity, along with clear violations of law by the Defendants and their staff, who conspired to: deny the Plaintiff fundamental Constitutional Due Process rights; made false statements to a Federal EEO Administrative Law Judge; produced false Freedom of Information Act (FOIA) "no records" certificates of both an "ongoing law enforcement investigation" and of MP involvement during the Plaintiff's 13 August 2010 visit to the post security office; produced legal reviews of aforementioned documents; made a false written statement regarding said fictitious "ongoing law enforcement investigation" designed to illegally withhold critical information from the plaintiff; illegally withheld Plaintiff's pay; colluded to make a false FOIA filing response to said fictitious investigation and MP involvement; provided a false legal review of the aforementioned documents; made various false statements under testimony against the Plaintiff; denied the Plaintiff's requests for evidence in violation of Title 5 U.S.C. 7513(e); provided false and deceptive signed statements against the Plaintiff; submitted a false and deceptive report to the United States Computer Emergency Readiness Team (US-CERT) report concerning a computer breach; spoliation of evidence to government security clearance authorities and FOIA against the Plaintiff; submitted expunged and previously adjudicated documents in violation of its Collective Bargaining Agreement (CBA), against the Plaintiff, and[] made false statements regarding harassment and aggression on the part of the Plaintiff. Finally, Defendant Crutchfield dismissed consecutive requests for reconsideration to lift the Plaintiffs bar, despite being provided overwhelming contradictory information from his own command, demonstrating his inability to be fair and impartial in this matter. The Defendants' actions to bar the Plaintiff were exercised in an arbitrary, unpredictable, and discriminatory manner, in violation of DoD policy, unjustly denied the Plaintiff earned Military Retirement benefits, forced out-of-pocket medical expenses, loss of on-post Veterans Administration assistance, and other earned benefits; defamed the Plaintiff's character and work ethic, and attacked his trustworthiness to hold a security clearance, thus damaging his future assignment potential and future earnings. The actions have also adversely affected the Plaintiff's and his wife's wellbeing.

(Complaint, ¶ 5).[1] Plaintiff seeks injunctive relief in the form of "[a] Federal criminal

---

[1] Plaintiff filed his complaint with 168 attached exhibits. (Doc. # 1 and #1-1 through 1-29). On October 1, 2012, he filed a "Notice of Evidentiary Submissions" seeking "placement" of additional exhibits (Enclosures 169 through 222) "to the COMPLAINT" and to his pending motions.

investigation into actions taken against the Plaintiff by all connected Fort Rucker officials; a[] Federal investigation into the alleged FOIA abuses; [and] lifting of bar." He further seeks ten thousand dollars in compensatory damages and twelve million dollars in punitive damages. (Complaint, ¶ 6).

## MOTION TO DISMISS

This action is presently before the court on the motion to dismiss filed by the defendants (Doc. # 13). Upon consideration of the motion, plaintiff's response in opposition to the motion (Doc. # 24), and the arguments presented in defendants' reply memorandum (Doc. # 22), the court concludes that the motion to dismiss plaintiff's due process claim is due to be granted.

### Motion to Dismiss Standard

To overcome a defendant's Rule 12(b)(6) motion, the complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must include factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Twombly, 550 U.S. at 555). Courts considering motions to dismiss first

---

(Doc. # 19, # 19-1 through 19-5). The court construed the notice as an amendment to the complaint. (Doc. # 23). Thus, the amended complaint includes 222 appended exhibits, comprising over 1500 pages.

"eliminate any allegations in the complaint that are merely legal conclusions" and, then, determine whether the well-pleaded factual allegations of the complaint – assuming their veracity – "'plausibly give rise to an entitlement to relief.'" See American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010)(citing Iqbal, 129 S.Ct. at 1950).  In considering a Rule 12(b)(6) motion, the court "'limits its consideration to the pleadings and exhibits attached thereto.'"  Thaeter v. Palm Beach County Sheriff's Office, 449 F.3d 1342, 1352 (11th Cir. 2006)(quoting Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000)(per curiam).  When the exhibits attached to a complaint contradict its allegations, the court is not required to accept the allegations as true.  Griffin Industries v. Irvin, 496 F.3d 1189, 1205-06 (11th Cir. 2007).  Additionally,  while the court construes pro se pleadings liberally, it "may not act as de facto counsel or 'rewrite an otherwise deficient pleading in order to sustain an action.'"  Porter v. Duval County School Bd., 406 Fed. Appx. 460 (11th Cir. 2010)(unpublished opinion; citation omitted).

## Discussion

Plaintiff contends that Muskopf and Crutchfield violated his constitutional right to procedural due process.[2]  Because plaintiff claims a violation of his constitutional rights and

---

[2]  In his complaint, plaintiff does not state expressly whether he claims a violation of his substantive or procedural due process rights.  However, in his response in opposition to the motion to dismiss, plaintiff argues that he "has provided sufficient evidence that ... Defendant Muskopf clearly added additional charges in a December 23, 2010 letter (Complaint, Encl. 37) which were never specified in his September 7, 2010 bar letter.  These facts clearly show that Defendant Muskopf did not provide the Plaintiff his Constitutional Right to Due Process by adding charges not in his bar letter.")(Doc. # 24, p. 3). He further contends that defendants have impinged on his statutory right to military health care and other earned military benefits such as the right to use the Commissary. (Id.). Plaintiff does not allege or argue a deprivation of fundamental rights sufficient

4

seeks monetary damages, defendants treat this action as a <u>Bivens</u> suit.[3]  (Doc. # 13).  They

contend that this action is due to be dismissed in its entirety because a <u>Bivens</u> remedy is

inappropriate in the present context, plaintiff has not alleged the violation of a constitutional

right, and – even if he has – it is not clearly established that plaintiff was entitled to any more

process than they accorded him, *i.e.*, notice of the bar and an opportunity to be heard.  (<u>Id</u>.).

Plaintiff  responds that he was "exonerated on all allegations" after a hearing before

ALJ Crean of the Department of Defense Office of Hearings and Appeals ("DOHA").[4]  He

contends that Muskopf violated his due process rights by adding new charges in the

December 23, 2010, letter that were not included in the September 7, 2010, bar letter without

giving plaintiff the opportunity to respond to the new charges. He argues that he was

deprived of his statutory right to military healthcare under 10 U.S.C. §§ 1074 and 1076, and

also other non-statutory military benefits.[5]

---

to support a substantive due process claim, and the court concludes that he seeks relief for the violation of his right to procedural due process.

[3] In <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Supreme Court recognized a cause of action for monetary damages against federal officials for a violation of the Fourth Amendment.

[4]  In his June 25, 2012, decision, ALJ Crean recommended that the Army's Personnel Security Appeals Board ("PSAB") reinstate plaintiff's security clearance. (Encl. 169).  However, ALJ Crean was not the decision authority on plaintiff's appeal of the revocation of his security clearance.  <u>See</u> DoD 5200.2R, ¶ C8.2.2.4.  On August 9, 2012, the U.S. Army Personnel Security Appeals Board denied plaintiff's appeal.  (Encl. 170).

[5]  Plaintiff does not expressly allege a violation of his rights under these particular statutes, which pertain to military healthcare, in the body of his complaint.  However, he does allege that "[t]he Defendants' actions to bar the Plaintiff ... unjustly denied the Plaintiff earned Military Retirement benefits, forced out-of-pocket medical expenses, loss of on-post Veterans Administration assistance, and other earned benefits[.]"  (Complaint, ¶ 5).  One of the statutes, 10 U.S.C. § 1076,

*Bivens* Remedy

Plaintiff asserts that a Bivens remedy is available because he is a military retiree with a statutory entitlement to healthcare, and claims a violation of his constitutional right to due process.  (Doc. # 24, p. 6, § IX). He points out that, in arbitration proceedings concerning his grievance under the collective bargaining agreement, agency counsel argued that the commander's decision to bar plaintiff from Fort Rucker was not arbitrable but is, instead, a matter for federal court.  (Id., pp. 6-7, §§ X and XII; see Encl. 29, pp. 57-60).  Plaintiff further notes that, in his written agreement with the agency settling the grievance, he reserved the right to contest the bar from post.  (Doc. # 24, p. 6; see Encl. 47).  He contends that because the agency "approved" the federal court venue, he has overcome the "special factors" that the defendants contend preclude the extension of a Bivens remedy.

Plaintiff's arguments miss the point. A Bivens claim seeks to impose liability for monetary damages on a federal official who has violated the plaintiff's constitutional rights. See Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)(noting that, in Bivens, the Court "'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights'")(citation omitted). Whether plaintiff may seek monetary damages from the defendants for the alleged constitutional violations is an entirely different question from whether plaintiff may resort to the courts at

---

relates to healthcare for military dependents.  Plaintiff does not allege or argue that he is a military dependent. Plaintiff alleges that defendants' actions have "adversely affected ... his wife's wellbeing."  (Complaint, ¶ 5).  Plaintiff may not, proceeding *pro se*, prosecute claims on behalf of his wife.

6

all to challenge the bar from post imposed by Muskopf on September 7, 2010 (Encl. 1 to Complaint), Muskopf's December 23, 2010 "follow-on" letter (Encl. 37), or Crutchfield's refusal to overturn the bar upon plaintiff's request (Encl. 14-16).

However, the court need not resolve the question of whether a <u>Bivens</u> remedy is available for a procedural due process violation in connection with a commander's decision to impose (or refuse to overturn) a bar from a military installation, because – assuming that it is – defendants are still entitled to dismissal. Plaintiff may not maintain a <u>Bivens</u> claim against the defendants in their official capacities, regardless of the factual bases for this claim. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471 (1994); <u>Boda v. United States</u>, 698 F.2d 1174 (11th Cir. 1983).[6] Additionally, in their individual capacities, Crutchfield and Muskopf are entitled to prevail on their qualified immunity defense.[7]

<u>Qualified Immunity</u>

Qualified immunity shields government officials exercising discretionary functions from civil damages when "their conduct does not violate clearly established statutory or

---

[6] Plaintiff does not indicate in his complaint whether he sues Crutchfield and Muskopf in their individual capacities, their official capacities, or both. Since he seeks monetary damages for the constitutional violation, it appears that he intends to sue them in their individual capacities. However, plaintiff had the Clerk serve the summons and complaint on the Secretary of the Army, the U.S. Attorney for this district, and the U.S. Attorney General, suggesting that plaintiff intends to sue the named defendants in their official capacities as well. (<u>See</u> Doc. # 3).

[7] In his response to the motion to dismiss, plaintiff argues that he is entitled to review of the defendants' debarment action under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*. (Doc. # 24, p. 6, § VIII). If this is so, plaintiff may not maintain his <u>Bivens</u> claim against Crutchfield and Muskopf. <u>Miller v. U.S. Dept. of Agriculture Farm Services Agency</u>, 143 F.3d 1413, 1416 (11th Cir. 1998)("Under our circuit's precedents, the existence of a right to judicial review under the APA is, alone, sufficient to preclude a federal employee from bringing a <u>Bivens</u> action.").

constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A Rule 12(b)(6) motion asserting qualified immunity is due to be granted if the well-pleaded factual allegations of the complaint, accepted as true, fail to allege the violation of a right that is clearly established under the law.  Cottone v. Jenne, 326 F.3d 1352 (11th Cir. 2003).[8]  Defendants are entitled to qualified immunity if plaintiff's allegations of fact fail to show that the defendants' conduct violated his constitutional right to due process or if his right to more process than he received in the debarment was not clearly established.  See Pearson v. Callahan, 555 U.S. 223 (2009); Saucier v. Katz, 533 U.S. 194 (2001).

Plaintiff's Allegations of Conduct by the Named Defendants

Plaintiff's Bivens claim against Muskopf and Crutchfield cannot rest on vicarious liability for the actions of their subordinates.  "Because vicarious liability is inapplicable to Bivens ... suits, a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution."  Iqbal, 556 U.S. at 676 (emphasis added).  Stripped of plaintiff's conclusory allegations that defendants conspired with staff members to commit various violations of law (see Complaint, ¶ 5, fifth sentence), plaintiff's complaint makes the following factual allegations regarding Muskopf's conduct:

---

[8]  The defendants do not contend that a heightened pleading standard applies to plaintiff's claims; the court has applied Iqbal's "plausibility" standard in evaluating plaintiff's factual allegations.  See Washington v. Albright, 814 F.Supp.2d 1317 (M.D. Ala. 2011)(discussing Eleventh Circuit precedent); see also Nettles v. City of Leesburg – Police Dept., 415 Fed. Appx. 116 (11th Cir. 2010)(unpublished opinion), *cert. denied* 131 S.Ct. 3081 (2011); Randall v. Scott, 610 F.3d 701 (11th Cir. 2010).

(1) after consulting with and receiving approval from Crutchfield, he issued the September 7, 2010, letter barring plaintiff from Fort Rucker; and (2) he issued a December 23, 2010, "follow-on letter ... describing in detail his further justification for the bar[,]" in which he "defamed the Plaintiff's character, stating he 'will not hesitate to act dishonestly or violate established rules and regulations for personal gain.'" (Complaint, ¶ 5). As to defendant Crutchfield, plaintiff alleges the following conduct: (1) he approved Muskopf's decision to issue the bar letter; and (2) he "dismissed consecutive requests for reconsideration to lift the Plaintiff's bar, despite being provided overwhelming contradictory information from his own command[.]" (Id.).[9]

Muskopf's September 7, 2010, letter notified plaintiff of Muskopf's order barring plaintiff from Fort Rucker, offering the following reasons:

> You have threatened the security, order, and discipline of the installation by misusing a government computer and distributing controlled classified information (FOUO) via email to your home email address and commercial union address. Some of the data is further classified as sensitive information and personally identifiable information (PII), which may be protected by the

---

[9] The court understands plaintiff's complaint to challenge only his continued debarment from Fort Rucker, and – despite his references to FOIA, the collective bargaining agreement and 5 U.S.C. § 7513 within the conclusory allegation of conspiracy by "Defendants and their staff" in paragraph 5 of the complaint – not to seek monetary damages for any particular FOIA violation or any infringement of his rights under the collective bargaining agreement or in connection with an adverse personnel action. To the extent he does, however, any such violations do not give rise to a Bivens remedy. See Bush v. Lucas, 462 U.S. 367 (1983); Lee v. Hughes, 145 F.3d 1272 (11th Cir. 1998), cert. den. 525 U.S. 1138 (1999); McCollum v. Bolger, 794 F.2d 602 (11th Cir. 1986), cert. den. 479 U.S. 1034 (1987); Johnson v. Executive Office for U.S. Attorneys, 310 F.3d 771 (D.C. Cir. 2002); Thompson v. Walbran, 990 F.2d 403 (8th Cir. 1993); 5 U.S.C. § 7121 (CBAs to include grievance procedures) and § 7123 (providing for judicial review of adverse final decision of Federal Labor Relations Authority in federal appellate courts); 5 U.S.C. § 552(a)(4)(B)(permitting injunctive relief against the *agency* for FOIA violation).

Privacy Act.

Furthermore, upon notice that your security clearance was suspended, you created a disturbance in the security office with behavior that was aggressive, intimidating, and threatening in nature. This is not the first instance of aggressive behavior on your part. Your history of aggressive behavior towards employees at Fort Rucker is detrimental to the good order and discipline of the installation and make you a threat to the security, safety and well-being of persons on Fort Rucker.

(See Complaint, ¶ 5; Encl. 1). Muskopf's letter further stated, "If you believe there is a compelling reason to justify a modification or termination of this decision, you should submit a request in writing to this Headquarters, Attention: Staff Judge Advocate, within seven days of receipt of this letter." (Encl. 1). Plaintiff availed himself of the opportunity to contest the bar order, submitting a letter to the Staff Judge Advocate – with a copy to defendant Muskopf – through the union's attorney. (Encl. 2, 9/14/2010 letter from attorney Stuart Kirsch). Kirsch disputed the factual basis for the bar order and requested that it be terminated in its entirety. He asked that, in the event Muskopf did not terminate the bar, the order be modified to permit plaintiff access to Fort Rucker to obtain medical care at the Army medical center, to shop at the "PX" and commissary, and to fulfill his representational responsibilities as an appointed union steward at Fort Rucker. Kirsch reported that plaintiff needed to schedule a medical appointment at the army medical center "within the next month" and that his access to the clinic is "imperative," as his "Tri-Care Prime insurance has certain limitations." (Id.). On September 21, 2010, Muskopf responded to Kirsch's letter, declining to rescind or modify the bar. (Encl. 3). Six days later, on September 27, 2010 – pursuant to

an inquiry from Muskopf regarding whether plaintiff "had to be seen by a Provider or member at Lyster Army Health Center" and after contacting the TRICARE Service Center Supervisor – the hospital commander signed the required documentation to change plaintiff's "PCM" to a network provider in Ozark "so that he could have appropriate healthcare outside of Lyster Army Health Center."  (Encl. 24).

Plaintiff alleges that, "[o]n December 23, 2010, Defendant Muskopf issued a *follow-on* letter ... describing in detail his *further* justification for the bar." (Complaint, ¶ 5)(emphasis added).   In opposing the motion to dismiss, he argues that he has "provided sufficient evidence that ... Defendant Muskopf clearly added additional charges in a December 23, 2010 letter (Complaint, Encl. 37) which were never specified in his September 7, 2010 bar letter.  These facts clearly show Defendant Muskopf did not provide the Plaintiff his Constitutional Right to Due Process by adding charges not in his bar letter (Complaint, Encl. 1), nor did he provide the Plaintiff an opportunity to respond to them."  (Doc. # 24, p. 3, § II).

Muskopf's December 23, 2010, letter his recommendation to the Army Central Personnel Security Clearance Facility ("SCF") that plaintiff's security clearance be revoked. (Encl. 37).  In his complaint and in his argument, plaintiff conflates the bar order and the security clearance revocation; however, they are two separate administrative actions. The two letters plaintiff cites as the basis for his due process claim reveal, on their face, that plaintiff's characterization of the December letter as a "follow-on letter" is accurate only to the extent

that Muskopf's security clearance revocation recommendation addressed some of the same conduct as his earlier debarment letter, and followed it chronologically.  Muskopf's letter to the SCF provides more detail concerning the circumstances of plaintiff's release of information and the "history of aggression" than does his earlier bar letter to plaintiff; additionally, Muskopf lists reasons for his adverse security clearance recommendation that he did not include in his letter stating the reasons for his debarment order (*e.g.*, plaintiff's providing an altered e-mail as evidence to an investigator and the condition of plaintiff's office upon his departure).  (See Encl. 1 and Encl. 37).  In his letter to the SCF, Muskopf describes the "incident ... in the security office when Mr. Wonders created a disturbance with behavior that was aggressive, intimidating and threatening in nature."  (Id., ¶ 1(b)(1)).  He then states, "*This act in concert with a history of aggressive actions, and the release of information, led me to bar Mr. Wonders from the installation*."  (Id., ¶ 1(b)(2)(emphasis added).  A comparison of the two letters reveals that the reasons Muskopf identified in the SCF letter for his earlier decision to bar plaintiff from Fort Rucker coincide with the reasons he gave in the debarment letter.

    "Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control."  Simmons v. Peavy-Welsh Lumber Co., 113 F.2d 812, 813 (5th Cir.), *cert. den.* 311 U.S. 685 (1940).  Plaintiff makes clear in his argument in opposition to the motion to dismiss that, by alleging that Muskopf provided "further" justification for the debarment decision in his December "follow-on" letter, he means that

Muskopf had reasons for barring plaintiff from Fort Rucker that he did not disclose in the debarment letter and as to which plaintiff had no opportunity to respond.  The court declines to accept this allegation – or this proposed inference from the allegations – as true, in view of the clear text of the letters themselves.  See id. ("The litigant may be defeated by his own evidence, the pleader by his own exhibits ....").  Defendant further alleges that the "[d]efendants' actions to bar the Plaintiff ... defamed the Plaintiff's character and work ethic, and attacked his trustworthiness to hold a security clearance, thus damaging his future assignment potential and future earnings." (Complaint, ¶ 5).  Here, again, plaintiff treats the December 23, 2010, letter – in which, he alleges, "Muskopf defamed the Plaintiff's character, stating he will not hesitate to act dishonestly or violate established rules and regulations for personal gain"– as included within the defendants' "actions to bar the Plaintiff." (Id.).  The exhibits to plaintiff's complaint demonstrate that the debarment process concluded on September 21, 2010, when Muskopf declined to revoke or modify the debarment order after reviewing the response plaintiff submitted through counsel.  (Encl. 1, 2, 3). Thus, the exhibits demonstrate that defendants' "actions to bar the plaintiff" were completed more than three months before Muskopf signed the December 23, 2010 letter in which he allegedly defamed plaintiff's character. Accordingly, the court does not accept as true for purposes of the motion to dismiss plaintiff's allegation that "[d]efendants' actions to bar the Plaintiff ... defamed the Plaintiff's character and work ethic, and attacked his trustworthiness to hold a security clearance, thus damaging his future assignment potential and future earnings."

(Complaint, ¶ 5).

<u>No Due Process Violation</u>

"To state a due process claim, a plaintiff must allege the deprivation of a property or liberty interest protected by the Fifth Amendment." <u>Karpeeva v. U.S. Dept. of Homeland Security Citizenship and Immigration Services</u>, 432 Fed. Appx. 919, 925 (11th Cir. 2011)(unpublished opinion), <i>cert. den.</i> 132 S.Ct. 590 (2011); <u>see also</u> <u>American Manufacturers Mutual Ins. Co. v. Sullivan</u>, 526 U.S. 40, 59 (1999)("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'").   While it might otherwise be reasonable to infer from plaintiff's allegations that he has suffered lost earnings since the date of the debarment due to his inability to go to his place of work on Fort Rucker, such an inference is not reasonable in the present case because: (1) plaintiff does not expressly attribute his demand for compensatory damages to lost earnings from his job at Fort Rucker (<u>see</u> Complaint, ¶ 6); and (2) evidence attached to plaintiff's complaint demonstrates that he cannot claim lost pay or benefits from his Fort Rucker job resulting from the debarment (<u>see</u> Encl. 47).   The Army agreed – in a settlement of plaintiff's grievance under the CBA and all but one of his six EEO complaints – to restore plaintiff's back pay and associated benefits attributable to his indefinite suspension on September 12, 2010, his indefinite suspension on November 16, 2010, and his removal from federal service on August 27, 2011; to place plaintiff on paid administrative leave through October 18, 2011; and to place plaintiff on an indefinite suspension thereafter,

to remain in effect "pending the outcome of the final DOHA decision regarding Grievant's security clearance revocation." (Encl. 47, Doc. # 1-5, pp. 30-34). Plaintiff agreed that the "indefinite suspension beginning on October 19, 2011, shall not be challenged in any administrative forum or court of law[.]" (Id., ¶ A(3)). Thus, plaintiff's lost earnings, if any, resulted from the indefinite suspension beginning on October 19, 2011, not from the debarment.

However, the bar order does affect plaintiff's statutory right to military healthcare, albeit only to a limited extent. The bar order precludes plaintiff from obtaining healthcare at the Army facility located at Fort Rucker, but does not affect his right to obtain healthcare at military facilities on other installations, or his right to obtain healthcare from civilian network healthcare providers through the TRICARE program.[10] It is reasonable to infer that plaintiff's use of TRICARE benefits may have resulted in a limited amount of out-of-pocket medical expenses that plaintiff might not have incurred had he been able to seek treatment at the Army facility on Fort Rucker and, also, that the use of military medical facilities at other installations may have caused plaintiff to incur additional travel expenses. The bar order also precludes plaintiff from using the commissary, post exchange, and VA office at Fort Rucker, but does not affect his right to access those facilities at other military installations. Thus, Plaintiff's complaint sufficiently alleges the deprivation of a protected property interest.

---

[10] The TRICARE program is DoD's managed healthcare program. See 10 U.S.C. §§ 1072(7), 1097.

When a plaintiff alleges the deprivation of a protected property or liberty interest, the question then becomes whether the procedures used by the defendant comport with due process. American Manufacturers, 526 U.S. at 59. "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v. McElroy, 367 U.S. 886, 895 (1961); see also Mathews v. Eldridge, 424 U.S. 319 (1976)(setting forth balancing test). In determining the whether the process afforded to plaintiff in depriving him of his property interest was constitutionally sufficient, the court applies the Mathews balancing test, considering: (1) the private interest affected; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. As noted above, the degree of deprivation of plaintiff's property interest here is limited. In contrast, the government's interest in "managing the internal operation of an important federal military establishment" (Cafeteria Workers, 367 U.S. at 896) is substantial. See U.S. v. Jelinski, 411 F.2d 476 (5th Cir.), cert. denied, 396 U.S. 943 (1969)("We do not doubt the Commander's historically recognized authority to summarily bar civilians from a military establishment in the exercise of his discretion in managing the internal operations

of the military facility. Conversely, appellant's primary interest in entering the base was the slight economic advantage gained through his use of the military facilities."); <u>see also</u> <u>Tokar v. Hearne</u>, 699 F.2d 753, 755-56 (5th Cir. 1983)(concluding that military dependent's primary interest of saving money by "using the base commissary, base exchange, or other base facilities" was "greatly outweigh[ed]" by the government's interest in the "base commander's authority to maintain discipline and order on the base and to ensure its smooth operation"); <u>United States v. Albertini</u>, 783 F.2d 1484, 1487 (9th Cir. 1986)("[T]he interest of the base commander in maintaining control over the entry of persons to Hickam Air Force Base is substantial; indeed, there is a strong tradition of treating that interest as being in a specially protectible class by itself. ... Even during an open house, an important security interest remains in controlling the access of persons thought to present special problems or dangers.")(citations omitted). There is some risk of an erroneous deprivation through the summary procedures used by the commander to bar plaintiff from the installation. However, because debarment authority resides in a senior military officer – the installation commander – such risk is not great.[11] Since the risk arises largely from the fact that the debarment authority is vested in a sole decisionmaker, additional process – such as requiring the commander to conduct an evidentiary hearing – would not reduce such risk significantly. In view of the commander's "important security interest ... in controlling the access of persons thought to present special problems or dangers" (<u>Albertini</u>, 783 F.2d at 1487),

---

[11] <u>See</u> 18 U.S.C. § 1382 (making it unlawful to enter a military post after being "ordered not to reenter by any officer or person in command or charge thereof").

increasing the commander's administrative burden by adding additional process beyond that afforded to the plaintiff is unwarranted.  Application of the <u>Mathews</u> factors demonstrates that defendants did not violate plaintiff's right to due process in barring him from Fort Rucker.  Additionally, plaintiff fails to state a procedural due process claim arising from Crutchfield's refusal to overturn the previously-imposed bar.  His factual allegations do not suggest that Crutchfield, by refusing to overturn Muskopf's debarment order, deprived plaintiff of a property or liberty interest sufficient to support a due process claim.  Any deprivation arising from plaintiff's inability to enter Fort Rucker resulted from the debarment order itself, not from Crutchfield's subsequent refusal to reinstate plaintiff's access to the installation.  <u>See</u> <u>Tefel v. Reno</u>, 180 F.3d 1286, 1299 (11th Cir.), *rehearing and suggestion for rehearing en banc denied*, 198 F.3d 265 (1999), *cert. den.* 530 U.S. 1228 (2000)(citing <u>Haitian Refugee Center v. Smith</u>, 676 F.2d 1023, 1037 (11th Cir. 1982) for its statement that "[p]rocedural due process is not itself an independent right, but merely the condition precedent to the deprivation of a life, liberty or property interest.").  Plaintiff's well-pleaded factual allegations do not establish that defendants violated plaintiff's constitutional right to due process.  Accordingly, the individual-capacity defendants are entitled to dismissal of plaintiff's claims on the basis of qualified immunity.

<u>No Violation of a "Clearly Established" Right</u>

Even assuming that the process by which defendants barred plaintiff from Fort Rucker was constitutionally insufficient under the due process clause of the Fifth Amendment,

defendants are entitled to qualified immunity because plaintiff's entitlement to more process than he was given is not clearly established under the law.  "'Clearly established law' is law that is sufficiently established so as to provide public officials with 'fair notice' that the conduct alleged is prohibited." Randall, 610 F.3d at 715.   Such "fair notice" may be found where: (1) there is binding case law establishing broad statements of principle that apply without reference to a particularized set of facts; (2) a precedential case based on materially similar facts determined that the conduct is unlawful; or (3) the facts of the case are so obviously unconstitutional that every objectively reasonable installation commander would know, even without case law on point, that Muskopf's and/or Crutchfield's conduct violated plaintiff's constitutional rights.  See id. at 715-16.  In this case, "only the caselaw of the Supreme Court, the Eleventh Circuit or the law of the highest court of the state where the events took place ... can 'clearly establish' constitutional rights." Amnesty International, USA v. Battle, 559 F.3d 1170, 1184 (11th Cir. 2009).  The court has found no binding case law providing a broad statement of principle applicable to the present situation, nor has it found binding case law decided on materially similar facts holding that a military installation commander must provide process other than that plaintiff received in this case. The precedential case law, in fact, suggests otherwise. See Cafeteria Workers and Jelinski, supra. For this additional reason, the individual-capacity defendants are entitled to qualified immunity on plaintiff's due process claims.

## MOTION TO RESCIND BAR

Plaintiff seeks an order rescinding Muskopf's order barring him from entering Fort Rucker, pending final adjudication of the case.  (Doc. # 17).[12]  As noted above, the facts alleged by plaintiff do not establish that the defendants violated plaintiff's constitutional right to due process in the debarment process.  Thus, plaintiff cannot demonstrate a substantial likelihood of success on the merits of the procedural due process claim presently before the court.[13]  Therefore, he is not entitled to the preliminary injunction he seeks on the claim he presents in his complaint.  See Winter v. National Resources Defense Council, Inc., 555 U.S. 7, 20 (2008)("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tip in his favor, and that an injunction is in the public interest.").

## MOTION TO AMEND

---

[12]  In a scheduling conference held in this matter on October 22, 2012, the undersigned Magistrate Judge asked that the defendants respond to the pending motions, including this motion. However, the court did not thereafter enter a written order directing them to do so.  Defendants have filed no response to plaintiff's pending motions; in view of the court's conclusion that plaintiff has failed to allege the violation of his constitutional right to due process, no response from defendants is necessary at this point.

[13]  Plaintiff's motion suggests that he challenges Muskopf's decision as violating Department of Defense Instruction 5200.08; in his response to the motion to dismiss, he contends that he may do so under the Administrative Procedure Act. (See Motion, ¶ 2 and p. 6, "Summary"; Doc. # 24, ¶VIII). However, the "shotgun" complaint presently before the court does not seek review under the APA expressly, and alleges a violation of DoD policy in only a conclusory fashion, without supporting allegations of fact. Thus, the allegations of the present complaint do not provide the defendants with fair notice of any such claim.  After the pending motion to dismiss is resolved, the court will allow plaintiff the opportunity to amend his complaint, if he chooses to pursue review of the debarment action under the APA, to allege the facts supporting such a claim.

The court permitted plaintiff until October 18, 2012, to respond to defendants' motion to dismiss  (Doc. # 15).  Three months after the close of the briefing schedule, plaintiff – without seeking leave of the court to do so – filed an "Addendum to Opposition to Defendants' Motion to Dismiss."  (Doc. # 32).  The court has not considered the addendum on the motion to dismiss, as it is untimely.  However, because plaintiff states, "This Addendum outlines a clear Due Process violation in which the Defendants conspired to manipulate and obstruct the Plaintiff's Due Process violation by adding additional charges to the security clearance adjudicators after learning the Plaintiff was given his security clearance over alleged Personally Identifiable Information (PII)," id., p. 1, and in view of plaintiff's *pro se* status, the court construes the addendum as a motion for leave to amend his complaint to add a claim that defendants violated his right to procedural due process in connection with the revocation of his security clearance.

Nevertheless, while the court is required to allow liberal amendment of pleadings, the present motion for leave to amend is due to be denied as futile.  See Grayson v. K-Mart Corporation, 79 F.3d 1086, 1110 (11th Cir. 1996)(court may consider futility of the proposed amendment in deciding whether to grant leave to amend).  The court lacks jurisdiction to review the commander's decision to continue to pursue revocation of plaintiff's security clearance after the SCF's initial reinstatement of the clearance.  See Hill v. White, 321 F.3d 1334 (11th Cir. 2003)(plaintiff alleged that charges levied by supervisor and which resulted in security clearance revocation were false and motivated by discriminatory animus based

on age; stating, in affirming the district court's dismissal of the claim for lack of jurisdiction, "The United States Supreme Court has made clear that a decision concerning the issuance or non-issuance of a security clearance is a matter within the purview of the executive and not to be second-guessed by the judiciary unless Congress has specifically provided otherwise.  To review the initial stages of a security clearance determination is to review the basis of the decision itself regardless of how the issue is characterized."); see also Hall v. United States Department of Labor, Administrative Review Board, 476 F.3d 847, 853 (10th Cir.), *cert. den.* 552 U.S. 993 (2007)("To review the circumstances under which the Army recommended revocation of Dr. Hall's security clearance for evidence of retaliation is to review the basis of the determination itself, regardless of how the issue is characterized.").

Additionally, even assuming the existence of jurisdiction, plaintiff's proposed amendment –  considered in light of his allegations within the addendum and his present complaint – fails to state an actionable due process claim.  As noted above, the threshold due process inquiry is whether the plaintiff has been deprived of a protected property or liberty interest. See American Manufacturers, 526 U.S. at 59.  Plaintiff has no protected property interest in a security clearance.  Cf. Department of the Navy v. Egan, 484 U.S. 518, 528 (1988)("It should be obvious that no one has a 'right' to a security clearance."); see Hesse v. Department of State, 217 F.3d 1372, 1381 (Fed. Cir. 2000), *cert. den.,* 531 U.S. 1154 (2001)("[T]o the extent Hesse is contending that he was denied due process by the procedure leading to the suspension of his security clearance, this court has held that a federal employee

does not have a liberty or property interest in access to classified information.  For that reason ... the Due Process Clause of the Fifth Amendment has no application to a proceeding to review an employee's security clearance."); Dorfmont v. Brown, 913 F.2d 1399, 1404 (9th Cir. 1990), *cert. den.,* 499 U.S. 905 (1991)("There is a presumption *against* obtaining or maintaining a security clearance.  A clearance may be maintained "only ... upon a finding that to do so is clearly consistent with the national interest."  There is no right to maintain a security clearance .... Dorfmont has not established a cognizable liberty or property interest and therefore is not entitled to constitutional due process protection.")(emphasis in original; citations omitted); Jamil v. Secretary, Department of Defense, 910 F.2d 1203, 1209 (4th Cir. 1990)("In order to establish a due process violation, Jamil must show that he had a property or liberty interest at stake. However, because of the inherently discretionary judgment required in the decisionmaking process, 'no one has a "right" to a security clearance' and revocation does not constitute an adjudication of one's character. It follows that the revocation does not infringe upon one's property or liberty interests.")(citations omitted); Hill v. Department of the Air Force, 844 F.2d 1407, 1411 (10th Cir.), *cert. den.*, 488 U.S. 825 (1988)("[F]ifth Amendment due process is not implicated here unless Hill had a constitutionally cognizable property or liberty interest in his security clearance under the circumstances of this case.  We hold that Hill did not have a constitutional property or liberty interest in his security clearance.")(citations omitted); Weber v. Buhrkuhl, 72 F.3d 134, 1995 WL 753912 (8th Cir. 1995)(unpublished opinion)("The district court also correctly

determined that Weber's due process claim based on revocation of his security clearance did not amount to a constitutional violation.").

Additionally, even assuming that Muskopf made false statements in his recommendation to the SCF that plaintiff's security clearance be revoked (see Complaint, ¶ 5), plaintiff's factual allegations do not demonstrate that defendants' actions in connection with the security clearance revocation deprived him of a protected liberty interest. See Walker v. Alexander, 569 F.2d 291 (5th Cir. 1978)(allegedly defamatory information in confidential personnel file considered by selective retention board did not infringe plaintiff's liberty interest); Ortwein v. Mackey, 511 F.2d 696, 699 (5th Cir. 1975)("The clear holding of [Sims v. Fox, 505 F.2d 857 (5th Cir. 1974)(en banc), cert. den., 421 U.S. 1011 (1975)] is that 'the mere presence of derogatory information in confidential files' does not infringe an individual's liberty interest.'"); DoD 5200.2R, Chapter 10 and Army Regulation 380-67, Chapter 10 (access to personnel security reports and records limited to the subject of the security investigation and to DoD or other federal government officials who have an official need for the information). Accordingly, to the extent plaintiff's "addendum" seeks relief on due process grounds for the defendants' alleged conduct in connection with the revocation of his security clearance, leave to amend is due to be denied on the grounds of futility.[14]

---

[14] Plaintiff had the opportunity to raise this issue in the administrative appeal of his security clearance revocation and, as noted in ALJ Crean's recommendation, plaintiff did so. (See Encl. 169). Even assuming jurisdiction and the existence of a protected property or liberty interest, the availability of alternate avenues for redress of errors in connection with security clearance revocation is a "special factor" weighing against implying a Bivens damages remedy against the individual-capacity defendants.

## REMAINING "CLAIMS"

It is readily apparent from plaintiff's complaint that he seeks to challenge the actions of Muskopf and Crutchfield relating to his debarment from Fort Rucker.  Otherwise, it is not at all clear what claims plaintiff pursues in this action. As noted above, plaintiff does not indicate expressly whether he sues Muskopf and Crutchfield in their individual capacities, their official capacities, or in both.  Additionally, plaintiff has chosen to make vague and conclusory allegations in his complaint and then to reveal the underlying factual and legal bases for his "claims" in bits and pieces in later-filed documents.

Reviewing plaintiff's complaint generously – with the benefit of hindsight aided by the contentions and additional facts plaintiff presents in his own motions and his opposition to the motion to dismiss – it appears that plaintiff seeks some relief under FOIA (see Complaint, ¶ 5 (single lengthy sentence with a conclusory allegation of conspiracy by "Defendants and their staff" to, *inter alia*, violate FOIA), Doc. # 18 (plaintiff's motion for review, setting forth plaintiff's FOIA allegations in 41 single-spaced numbered paragraphs spanning ten pages), and Doc. # 24, ¶ XI (asserting, *inter alia*, that "discrepancies exist with regard to [plaintiff's] FOIA requests made to Defendants' organization which have directly obstructed his Due Process rights" and appearing to seek FOIA contempt sanctions for "withholding of evidence from attorneys of both Fort Rucker and Department of the Army Judge Advocate General offices")).  It further appears that he may be attempting to assert some claim to relief arising from an alleged conspiracy to withhold evidence in connection with an adverse personnel action against the plaintiff (id., citing 5 U.S.C. 7513(e)) and an

alleged conspiracy to submit "expunged and previously adjudicated documents in violation of its Collective Bargaining Agreement" to an unidentified person, Board, or tribunal – perhaps in connection with either the settled arbitration proceeding or the security clearance revocation proceedings  (See Complaint, ¶ 5).  Finally, even though his complaint does not mention the Administrative Procedure Act or a violation of "Chapter 3.2.3 of Department of Defense Instruction Number 5200.08,"  plaintiff reveals in his "Addendum" (see Doc. # 32, p. 2) that the cited instruction forms the basis for his allegation that "Defendants' action to bar the Plaintiff were exercised in an arbitrary, unpredictable, and discriminatory manner, in violation of DoD policy" (see Complaint, ¶ 5); in his response to the motion to dismiss, plaintiff alleges facts in support of this contention (see Doc. # 24, p. 8) and contends that the debarment decision is subject to review under the APA  (see Doc. # 24, ¶ VIII).[15] Additionally, while plaintiff alleges that Muskopf "defamed plaintiff's character" in his December 2010 "follow-on letter," it appears from the face of the complaint that plaintiff made this allegation in support of his contention that Muskopf violated his right to due process. (Complaint, ¶ 5).  However, in his response to the motion to dismiss, plaintiff contends that this allegation supports a state law defamation claim under Massachusetts law. (See Doc. # 24, ¶ IV).

Plaintiff cannot amend his complaint through argument in opposition to the motion to dismiss or in argument presented in other motions.  His "shotgun" complaint  is plainly

_____

[15]  The court here expresses no opinion regarding the viability of any such claims, or whether plaintiff has sued the correct defendants as to any of them.

insufficient to permit orderly resolution of any additional claims plaintiff seeks to present; it is not framed in a manner even to permit a responsive pleading by the defendants.[16] Accordingly, the undersigned Magistrate Judge recommends that the District Judge refer this matter back to the undersigned for further proceedings, including the entry of an order allowing plaintiff the opportunity to amend his complaint.

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that:

(1) the motion to dismiss (Doc. # 13) be GRANTED, and that plaintiff's due process Bivens claims be DISMISSED with prejudice for failure to state a claim upon which relief may be granted as to defendants in any capacity and, as to the defendants in their individual capacities, on the basis of qualified immunity;[17]

(2) plaintiff's Motion to Rescind Bar to Entry onto Fort Rucker Pending Final Adjudication of the Case (Doc. # 17) be DENIED;

(3) Plaintiff's "Addendum to Opposition to Defendants' Motion to Dismiss" (Doc. # 32) – construed as a motion for leave to amend the complaint to claim a violation of

---

[16] For instance, had Muskopf had fair notice that plaintiff sues him for defamation under state law, the United States likely would have taken the required steps to be substituted for Muskopf as the defendant and sought dismissal of the claim as not cognizable under the Federal Tort Claims Act.

[17] Ordinarily, a plaintiff should be permitted an opportunity to amend his complaint to restate his claims. However, as discussed above, the exhibits plaintiff attached to his complaint demonstrate that he cannot present a viable claim that defendants violated his right to procedural due process in connection with the debarment action. Thus, dismissal of this claim with prejudice is appropriate.

procedural due process in the revocation of plaintiff's security clearance – be DENIED as futile; and

(4) that this action be referred back to the undersigned Magistrate Judge for entry of an order allowing plaintiff an opportunity to amend his complaint and providing him with direction about how to do so in a manner to permit orderly disposition of his claims.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action.  The parties are DIRECTED to file any objections to this Recommendation on or before February 27, 2013. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993);  Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 13th day of February, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE